**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:05CV205-1-MU
5:00CR34**

| | |
|---|---|
| DAVID GLENN GREEN, ) | |
| ) | |
| Petitioner, ) | |
| Vs. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**THIS MATTER** comes before the Court upon Respondent's Motion for Summary Judgment (Doc. No. 13), filed February 6, 2006; Petitioner's Motion for Summary Judgment (Doc. No. 24), filed February 13, 2006; Petitioner's Ex Parte Motion (Doc. No. 26), filed October 16, 2006; and Petitioner's Motion to Unseal Document (Doc. No. 30), filed November 5, 2007 .

For the reasons set forth below, Respondent's Motion for Summary Judgment is granted, Petitioner's Motion for Summary Judgment is denied and Petitioner's Motion to Vacate is dismissed. In addition, Petitioner's Ex Parte Motion and Motion to Unseal Document are denied.

## **PROCEDURAL HISTORY**

On August 8, 2000, Petitioner was indicted on four counts of bank robbery and one count of possession of a firearm during and in relation to a crime of violence. On May 7, 2001, Petitioner, in a second superceding indictment, was charged with four counts of bank robbery, two in violation of 18 U.S.C. § 2113(a) and two in violation of

18 U.S.C. § 2113(d), and two counts of using, carrying, or brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). On July 10, 2001, the Government filed an Information pursuant to 18 U.S.C. § 3559(c) notifying Petitioner that based upon two prior violent felonies the Government would be seeking a mandatory sentence of life imprisonment.

Beginning July 16, 2001, Petitioner's case was tried before a jury, the Honorable Richard L. Voorhees presiding, and on July 19, 2001, this Court declared a mistrial. The case was tried for a second time beginning November 7, 2001, Judge Richard L. Voorhees presiding again, and on November 9, 2001, the jury returned a verdict of guilty on all counts. On May 15, 2002, the Government produced a copy of a tape recording of an interview between Petitioner and an investigating agent that was inadvertently overlooked during trial preparation. On August 30, 2002, Petitioner filed a motion for new trial arguing that the tape constituted exculpatory evidence warranting a new trial under Brady v. Maryland, 373 U.S. 83 (1963). This Court conducted a hearing on Petitioner's motion on November 4, 2002, and denied Petitioner's motion that same day.

On December 16, 2002, the case was reassigned to the Honorable Lacy H. Thornburg for sentencing because Judge Voorhees owned stock in one of the victim banks, Bank of America. Petitioner filed a second motion for a new trial on December 20, 2002, which motion was denied on January 28, 2003. Petitioner filed a pro se motion for new trial on February 6, 2003, which was denied on February 18, 2003.

On February 25, 2003, this Court conducted Petitioner's sentencing hearing. Upon the Government's motion, the Court vacated Petitioner's two bank robbery

convictions charging violations of 18 U.S.C. § 2113(a) and sentenced Petitioner to life imprisonment on the remaining counts, with the bank robbery counts to run concurrently and the sentences on the firearms counts to run consecutively to each other and the concurrent sentences. Petitioner filed a Notice of Appeal on February 28, 2003, and this Court entered Judgment on March 13, 2003.

On appeal Petitioner argued that this Court erred in denying his motion for a new trial based on undisclosed exculpatory evidence under Brady. On December 18, 2003, the United States Court of Appeals for the Fourth Circuit affirmed this Court's denial of Petitioner's Motion for a New Trial "for the reasons stated by the district court from the bench." United States v. Green, 82 F. App'x 842 (4th Cir. 2003). On April 12, 2004, Petitioner filed a petition for writ of certiorari with the United States Supreme Court which was denied on June 1, 2004.

On May 20, 2005, Petitioner timely filed the instant Motion to Vacate, Set Aside, or Correct Sentence. In his Motion, Petitioner alleges claims of ineffective assistance of counsel in failing to conduct a sufficient pretrial investigation based upon: (1) his trial counsel's failure to hire an investigator; (2) trial counsel's failure to investigate the July 11, 2000, statement by potential witness John Hauss; (3) trial counsel's failure to investigate Lieutenant Dean Abernathy's testimony as to the location of a particular truck at the Food Lion store; (4) trial counsel's failure to investigate information provide by Detective Wayne Lynn; (5) trial counsel's failure to investigate the statement and information provided by Detective Lisa Proctor; and (6) trial counsel's failure to investigate information provided by Jayshawn Jefferson prior to Petitioner's second trial. Petitioner also asserts that his trial counsel was ineffective

when he failed to challenge the Government's admission of Petitioner's alleged confession. Finally, Petitioner argues that this Court abused its discretion in failing to address his ineffective assistance of counsel claims at the trial level.

## ANALYSIS

### I. Ineffective Assistance of Counsel

Petitioner's contention that he received ineffective assistance of counsel is governed by the holding in Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In Strickland, the Supreme Court held that in order to succeed on an ineffective assistance of counsel claim, a petitioner must establish that counsel's performance was constitutionally defective to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby, that is, there is a reasonable probability that but for the error, the outcome would have been different. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. At 689; Fields v. Attorney General of Md., 956 F.2d 1290, 1297-99 (4th Cir.1992), cert. denied, 506 U.S. 885 (1995). Petitioner bears the burden of proving Strickland prejudice. Fields, 956 F.2d at 1297. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Id. at 1290.

#### 1. Failure to Hire Investigator

Petitioner alleges generally that his counsel was ineffective for failing to conduct any pretrial investigation. In support of his assertion, Petitioner states that in an April 19, 2001, letter his trial counsel acknowledged the need for an investigator in Petitioner's case. In addition, Petitioner states that his trial counsel filed an ex parte

4

motion with this Court setting forth his belief that significant additional investigation was needed in Petitioner's case and requesting funds to obtain an investigator.

While defense counsel did write a letter on April 19, 2001, shortly after being appointed[1] to represent Petitioner indicating his belief that he would require the services of an investigator, upon further review of the case,[2] Petitioner's counsel determined that funds for an investigator were not necessary. (Culler Aff. ¶¶ 16-19, 33.) In his affidavit, defense counsel asserts that after he began investigating the case himself he determined that the services of an investigator were not necessary after all. (Culler Aff. ¶¶ 16, 17.) More specifically, Petitioner's counsel states that upon his own investigation he learned that most, if not all, of the bank tellers could not identify Petitioner. (Culler Aff. ¶ 18.) He also learned that the primary evidence against Petitioner was footage from a surveillance camera, testimony from his live-in girlfriend, and Petitioner's confession. (Culler Aff. ¶ 19.)

Counsel's belief, at first blush, that an investigator was needed does not render his subsequent determination, after becoming more familiar with the case, that an investigator was unnecessary ineffective. Petitioner offers no particular evidence that an investigator could have uncovered that was not uncovered. See Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958)(in a § 2255 motion a petitioner bears the

---

[1] Richard Culler was the second attorney appointed to represent Petitioner. Mr. Culler was appointed on or about April 13, 2001.

[2] In his affidavit Mr. Culler states: "prior to trial, I thoroughly conducted an investigation into the underlying facts by traveling to each of the banks . . . . I personally attempted to interview witnesses at each bank location, and thoroughly reviewed the interior of each bank, the camera positions and attempted to interview or locate any tellers involved in the subject robberies . . . . (Culler Aff. ¶ 16.)

burden of proof by a preponderance of the evidence). As such, Petitioner has failed to establish the requisite prejudice. Based upon the record this Court concludes that Petitioner's counsel's decision not to hire an investigator after further review of the case does not constitute ineffective assistance of counsel.

Petitioner also references his counsel's May 9, 2002, letter to an investigator as evidence that he should have hired an investigator prior to the first trial. At the time of the letter Petitioner's counsel had very recently learned of the existence of evidence the Government had failed to previously disclose to the defense. Petitioner's unsupported allegation does not support a claim of ineffectiveness of counsel.

**2. Failure to Investigate John Hauss**

Petitioner alleges that his trial counsel was ineffective for failing to further investigate a July 11, 2000, statement provided to Lieutenant Dean Abernathy by Lincolnton resident John Hauss. According to the statement, Mr. Hauss saw a vehicle that was registered to Ms. Robinson, Petitioner's girlfriend, stop across the road from his house and a black male exit the vehicle and walk along the side of the road looking for something and returning to the vehicle approximately fifteen minutes later without having picked up anything. Petitioner argues that this statement proves that law enforcement officers, including Lieutenant Abernathy, were aware of Ms. Robinson and testified falsely concerning the information allegedly provided to them by Ms. Robinson, when, in fact, that information had been provided on July 11, 2000, by Mr. Hauss.

A review of the record reveals that there was no testimony at trial regarding Mr. Hauss' statement. Moreover, Mr. Hauss' statement does not impugn the testimony of Ms. Robinson, Detective Proctor, or Lieutenant Abernathy. Rather, at most, it suggests

6

that law enforcement officers had another source of information concerning Petitioner's search of the area which corroborated Ms. Robinson's testimony concerning Petitioner's search for the gun. Petitioner has failed to establish a claim of ineffective assistance of counsel.

### 3. Lieutenant Abernathy's Truck Testimony

Petitioner alleges that his trial counsel's investigation was deficient because Lieutenant Abernathy's testimony as to the location of the Ford F-150 truck conflicted with the testimony of Anne McDaniel, a Food Lion employee. More specifically, Petitioner asserts that Ms. McDaniel testified that the truck was in the parking lot approximately two weeks in the beginning of June while Lieutenant Abernathy testified that he saw the truck in the parking lot after he became involved in the case in mid-July 2000, some six weeks after the first robbery and before the second robbery.

Petitioner is correct that the testimony of Ms. McDaniel differed from the testimony of Lieutenant Abernathy with regard to how long the truck was at the Food Lion store. This discrepancy however does not indicate that Lieutenant Abernathy committed perjury nor does it support an assertion that counsel should have further investigated to determine if Lieutenant Abernathy was telling the truth. The jury heard the testimony of both witnesses and any conflict that existed was be resolved by the jury. Moreover, Petitioner fails to state what a further investigation would have uncovered. As such Petitioner has, at a minimum, failed to establish that he was prejudiced by trial counsel's actions.

### 4. Detective Wayne Lynn's Testimony

7

Petitioner next asserts that his trial counsel's investigation was deficient because he failed to investigate a discrepancy between Detective Lynn's testimony as to the discovery of the hat allegedly worn by the perpetrator of the first robbery and the account of that discovery Detective Lynn had earlier provided to responding Officer Devonda Friday.

At both trials Detective Lynn testified to having found the hat later identified by bank tellers as the hat worn by the perpetrator of the first robbery. Petitioner asserts that this testimony differed from the account Detective Lynn provided to Officer Friday in which he stated that he had seen two black males in an older model Oldsmobile. Petitioner fails to explain how the two statements differed or why any alleged discrepancy should have triggered additional investigation.[3] As such, Petitioner has failed to establish that his counsel was ineffective on this basis.

**5. <u>Detective Proctor's Testimony</u>**

Petitioner also alleges that trial counsel erred by not further investigating the information provided by Detective Proctor, as it was ultimately revealed that her testimony during the first trial was inaccurate.

This issue was largely litigated in the context of Petitioner's motion for a new trial and on direct appeal, when counsel argued that the Government's failure to turn over notes from an interview conducted by Detective Proctor violated Petitioner's right to exculpatory evidence under <u>Brady</u>. In both contexts Petitioner's claim was rejected.

---

[3] Ms. Robinson, Petitioner's ex-girlfriend, specifically testified that the hat in question belonged to Petitioner. (Nov. 2001 Tr. Trans. p. 445.) Detective Lynn's testimony regarding the hat served to explain the discovery of the hat and established the chain of custody.

Petitioner has not produced any evidence to suggest that a further investigation of Detective Proctor would have yielded a different result at trial. The evidence at trial was overwhelming[4] and Detective Proctor's testimony was not central to the Government's case, as evidenced by the fact that the Government did not even offer her testimony during the second trial. Again, Petitioner has failed to establish that he was prejudiced and his ineffective assistance of counsel claim on this basis fails.

### 6. Jayshawn Jefferson's Testimony

Petitioner also argues that trial counsel should have known that Mr. Jayshawn Jefferson perjured himself on the witness stand and that counsel should have investigated Mr. Jefferson further. In support of his contention, Petitioner cites to trial testimony where his attorney got Mr. Jefferson to acknowledge that he had previously lied to law enforcement officers.

Petitioner does not specify what exactly a further investigation of Mr. Jefferson would have revealed and how such information would have impacted his trial. See Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958)(in a § 2255 motion a petitioner bears the burden of proof by a preponderance of the evidence). Moreover, the cross-examination cited to by Petitioner appears to support a conclusion that his counsel was effective with regard to discrediting this witness. Again, Petitioner has failed to establish his ineffective assistance of counsel claim on this basis.

### 7. Motion to Suppress

---

[4] At the hearing on the Motion for New Trial, the Court found that "the evidence of guilt was abundant and substantial." (Nov. 2002 Mot. Hearing Trans. p. 45.)

Petitioner alleges that trial counsel was ineffective for failing to attempt to have his confession suppressed on the basis that it was a fabrication by Agents Brown and Mayer. In particular, Petitioner focuses on the failure of the agents to have Petitioner initial such statement.

There is no requirement that confessions be written, signed or initialed. The failure to take these actions, however, allows a defense counsel to attack the accuracy and voluntariness of such confessions. A review of the trial transcript reveals that this is precisely what Petitioner's counsel did in the instant case. That is, Petitioner's counsel extensively questioned Agent Brown regarding his notes and his failure to have Petitioner initial them. Petitioner has not provided any basis upon which his counsel should have moved to suppress his confession.[5] As such, Petitioner's counsel was not ineffective for failing to file a motion to suppress.

## II. Failure by Court to Sua Sponte Challenge Trial Counsel's Performance

Finally, Petitioner argues that this Court abused its discretion in failing to address his ineffective assistance of counsel claims that he raised after his first trial.[6] As set forth above, there was no evidence in the record upon which this Court could have concluded that Petitioner's counsel's performance was deficient. Consequently, it was not an abuse of discretion for this Court to permit Mr. Culler to continue to represent Petitioner throughout the district court proceedings.

---

[5] Trial testimony was presented that established that two FBI agents were present during Petitioner's confession and that Petitioner was advised of his rights under Miranda v. Arizona, 383 U.S. 436, 444 (1966), and that he waived his right to counsel. (Nov. 2001 Tr. Trans. pp. 147-152, 516.)

[6] Petitioner's first trial resulted in a mistrial.

10

### III. Miscellaneous Motions

Petitioner has also filed an <u>Ex Parte</u> Motion and a Motion to Unseal Document. In his <u>Ex Parte</u> Motion Petitioner requests that this Court provide him with funds to hire an investigator. In support of his request Petitioner cites to his defense counsel's initial letter requesting funds. As previously stated, after more fully reviewing the case Petitioner's defense counsel concluded that funds were not necessary. Petitioner does not specify what an investigator would likely discover. Indeed, Petitioner provides no independent reason to justify awarding investigator funds in this collateral matter and as such his request is denied.

Petitioner also asks this Court to unseal the CJA Court Appointed Counsel Payment Vouchers. Petitioner asserts that the Clerk of Court has informed him that documents associated with the vouchers are under seal and that a court order is needed to obtain copies. This Court has reviewed the criminal file and all documents related to the vouchers have been sent to Petitioner. In any event, the Court notes that CJA voucher documents do not contain the type of information Petitioner appears – based upon his assertions in the motion – to believe that they do. Petitioner's Motion is denied.

### IV. Conclusion

A review of the record reveals that Petitioner's trial counsel vigorously represented Petitioner during his criminal proceedings. However, the overwhelming evidence against Petitioner resulted in his ultimate conviction. Moreover, the Court notes that the Sixth Amendment does not mandate that a defendant receive a perfect trial, but merely one which is free from constitutional error. <u>See</u> <u>United States v.</u>

Hasting, 461 U.S. 499, 508-09 (1983)("taking into account reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, . . . and the Constitution does not guarantee such a trial.") and Delaware v. Van Ardsall, 475 U.S. 673, 681 (1986)(noting that a criminal defendant is entitled to a "fair trial, not a perfect one.").

**THEREFORE, IT IS HEREBY ORDERED** that:

1. Respondent's Motion for Summary Judgment is **GRANTED;**
2. Petitioner's Motion for Summary Judgment is **DENIED**;
3. Petitioner's Ex Parte Motion is **DENIED**;
4. Petitioner's Motion to Unseal Document is **DENIED**; and
5. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence is **DISMISSED**.

Signed: July 21, 2008

Graham C. Mullen
United States District Judge